FILED

January 27, 2016

TN COURT OF
WORKERS' COMPENSATION
CLAIMS

TIME 2:43 PM



# IN THE COURT OF WORKERS' COMPENSATION CLAIMS
## AT JACKSON

| | | |
|---|---|---|
| **ESSIE JOHNSON** | ) | **Docket No.: 2015-07-0266** |
| **Employee,** | ) | |
| **v.** | ) | **State File Number: 85880-2014** |
| **FIRST UNITED METHODIST** | ) | |
| **CHURCH** | ) | |
| **Employer,** | ) | **Judge Amber E. Luttrell** |
| **And** | ) | |
| **TRAVELERS** | ) | |
| **Insurance Carrier.** | ) | |
| | ) | |

---

## EXPEDITED HEARING ORDER DENYING MEDICAL AND TEMPORARY DISABILITY BENEFITS

---

This matter came before the undersigned Workers' Compensation Judge on the Request for Expedited Hearing filed by the employee, Essie Johnson, pursuant to Tennessee Code Annotated section 50-6-239 (2015). Ms. Johnson seeks medical benefits for an alleged injury to her feet. The employer, First United Methodist Church (FUMC), denied compensability of Ms. Johnson's alleged injury. The central legal issue is whether Ms. Johnson is likely to establish at a hearing on the merits her alleged injury to her feet arose primarily out of her employment with FUMC. For the reasons set forth below, the Court finds that Ms. Johnson did not carry her burden of proving entitlement to the requested benefits at this time.[1]

### History of Claim

Ms. Johnson is a fifty-eight-year-old resident of Madison County, Tennessee. (T.R.1.) She worked for FUMC in Jackson, Tennessee as a custodian. Her job duties included, but were not limited to, emptying trash, vacuuming the floor, dust mopping, cleaning bathrooms, and cleaning tables.

Ms. Johnson alleged a work-related injury on October 21, 2014. She testified she

---

[1] A complete listing of the technical record and exhibits admitted at the Expedited Hearing is attached to this Order as an appendix.

ironed tablecloths on occasion in the course and scope of her employment and experienced pain over time in her left foot that traveled up to her calf, knee, hip, and left shoulder. According to Ms. Johnson, the pain was "not as much" on the right side. She further testified her injury is to her whole body. She stated she limps and her body "twists" when she walks. In the Petition for Benefit Determination, the Court notes Ms. Johnson described her injury as follows, "feet . . . tarsal tunnel syndrome...sides from toe to head." (T.R. 1.) The Dispute Certification Notice lists the injury as "bilateral feet." (T.R. 2.) On cross-examination at the expedited hearing, Ms. Johnson described her injury as "pain from the feet up my whole body that caused a 'twist' in my body." According to Ms. Johnson, she told her supervisor, Tricia Odom, about her pain, but nothing was done.

Ms. Johnson testified she sought treatment on her own with a podiatrist, Dr. Jerome Cawthon. According to the medical records, Ms. Johnson first saw Dr. Cawthon on October 16, 2014, and reported bilateral leg pain and numbness for the last six months. (Ex. 5 at 40.) The history indicated her symptoms were located in the plantar foot with a gradual onset. She also described pain in her lateral thigh and calf cramping. There was no mention in the record of Ms. Johnson's work at FUMC. Following a physical exam, Dr. Cawthon diagnosed bilateral tarsal tunnel syndrome. He recommended Achilles stretching exercises and physical therapy for severe equinus and orthotic fabrication.

The only other record from Dr. Cawthon is dated January 12, 2015. On that date, Ms. Johnson complained of right ankle and plantar foot pain. Dr. Cawthon noted, "the pain starts in the ball of her foot, runs proximally across the plantar foot and up her calf to her back." *Id.* Again, Dr. Cawthon diagnosed tarsal tunnel syndrome and equinus deformity of the foot. He made no mention of Ms. Johnson's work activities or alleged injury at FUMC.

Ms. Johnson also testified she received treatment at Durham Chiropractic for her alleged work-related injury to her feet. She introduced records from Durham Chiropractic for dates of service between July 2013 and June 2014 that pre-date Ms. Johnson's alleged injury date of October 21, 2014. The records indicate Ms. Johnson sought chiropractic treatment for her cervical, thoracic, and lumbar spine. She also registered complaints on occasion of right or left sacroiliac joint discomfort, calf pain, and pelvic pain. (Ex. 5 at 13-39.) There is no indication in Dr. Durham's records of any treatment for Ms. Johnson's feet or mention of a work-related injury.

FUMC sent Ms. Johnson to Dr. Jason Hutchison for an orthopedic evaluation at West Tennessee Bone and Joint on January 28, 2015. (Ex. 5 at 42.) Prior to the visit, FUMC provided Dr. Hutchison records from Ms. Johnson's personal physician, Dr. Marshall Banks, as well as records from Dr. Tim Sweo and Dr. Cawthon. Ms. Johnson gave Dr. Hutchison a history of helping FUMC iron tablecloths in late 2012. She

2

complained that soon thereafter she began having pain in her legs, left worse than right, and numbness in her feet. She did not describe an acute injury. She stated moving from side to side and twisting caused her pain. Dr. Hutchison noted Dr. Sweo previously diagnosed Ms. Johnson with osteoarthritis of the knees in 2013 and Dr. Cawthon diagnosed bilateral tarsal tunnel syndrome in October 2014. Upon examining Ms. Johnson, Dr. Hutchison diagnosed lumbar spondylosis, tarsal tunnel syndrome, and possible lumbar stenosis. Concerning causation, Dr. Hutchison opined:

> While Ms. Johnson's occupation ironing may exacerbate her underlying symptomatology, it is not the proximate cause of her problem. Specifically, the tarsal tunnel syndrome, she has two risk factors independent of her job. To my knowledge, there is no occupational-related cause of tarsal tunnel. She has diabetes and pes planus, both of which are known risk factors for tarsal tunnel. Both of these are pre-existing or non work-related risk factors.

*Id.*

Dr. Hutchison further opined, "this is not directly a work-related injury." He recommended Ms. Johnson seek further care for her ailments under her private health insurance. *Id.* at 43.

Ms. Johnson's husband, Bobby Johnson, testified he also worked for FUMC from approximately 2008 through December 2013. Mr. Johnson worked part-time as a maintenance helper. He testified Ms. Johnson complained to him of pain in her feet from standing on concrete. He stated he heard Ms. Johnson talk to Ms. Odom about "pain doing her job."

For its case, FUMC offered the testimony of Ms. Odom, Jan Kelley, and Glynn Graves.[2]

Ms. Odom is the operations manager for FUMC. Ms. Odom testified Ms. Johnson was asked to iron on occasion for events in their banquet facility referred to as "Clayton Hall." Ms. Odom stated that ironing was not a task Ms. Johnson did on a daily basis. She recalled sometime in early 2013, Ms. Johnson complained that her feet and legs were bothering her while standing and ironing. Ms. Odom subsequently clarified that Ms. Johnson complained mainly about her knees in 2013.[3] When Ms. Johnson complained in

---

[2] FUMC's witnesses testified they observed Ms. Johnson spending considerable time sitting in Sunday school classrooms studying, eating, or talking on the phone instead of working. They gave further testimony suggesting Ms. Johnson had a poor work ethic and was not a "team player." The Court gave little consideration to this testimony since Ms. Johnson's work habits are not directly relevant to whether she sustained a compensable work injury from standing while ironing tablecloths as alleged in the Petition for Benefit Determination.

[3] Ms. Odom testified Ms. Johnson filed a prior workers' compensation claim at FUMC alleging an injury to her knees in 2012 or 2013 from standing and ironing tablecloths. Ms. Odom further testified Ms. Johnson filed another

2013, Ms. Odom advised Ms. Johnson not to stand and do all of the ironing at one time. She also purchased a gel mat for Ms. Johnson to stand on while ironing. She testified there was no quota or deadline for the ironing responsibilities. Ms. Odom stated, "I was always very careful to work with her when she was not feeling well to let her rest as much as she needed."

Ms. Odom testified she did not learn that Ms. Johnson had "problems with her feet" until sometime around October 2014, when she saw Ms. Johnson's medical record of her visit with Dr. Cawthon on October 16, 2014. At that time, she spoke to administrators at FUMC and filed a workers' compensation claim for the alleged injury. Ms. Odom offered Ms. Johnson a panel of physicians on November 18, 2014, that included Dr. Cawthon. (Ex. 6.) Ms. Johnson selected Dr. Cawthon; however, when Ms. Odom attempted to schedule an appointment with Dr. Cawthon, she learned he would not see Ms. Johnson under workers' compensation. Ms. Odom testified FUMC offered Ms. Johnson a second panel[4] that listed Dr. White,[5] Dr. Kelly Pucek, and Dr. Hutchison. Ms. Odom could not reach Dr. White. Ms. Odom scheduled an appointment with Dr. Pucek; however, he cancelled the morning of the appointment. Therefore, FUMC scheduled an appointment for Ms. Johnson with Dr. Hutchison. Ms. Odom testified Ms. Johnson never missed work due to her feet.

On July 23, 2015, FUMC sent Ms. Johnson to Nova Medical Center in Memphis, Tennessee, for a fit-for-duty exam. (Ex. 5 at 45.) Ms. Odom testified FUMC decided it was in Ms. Johnson's best interest to have an independent exam to determine if she could perform the physical duties of her job. The Nova report indicated Ms. Johnson was not able to perform all the essential functions related to her employment. Nova indicated Ms. Johnson was disqualified due to "cardiovascular, blood pressure, and other." Following the Nova evaluation, FUMC terminated Ms. Johnson's employment. (Ex. 3.)

Ms. Kelley works for FUMC as a ministerial assistant. In the course of a workday, Ms. Kelley testified she saw Ms. Johnson six to eight times. Ms. Johnson never told her about problems with her feet.

Mr. Graves works in facilities and maintenance for FUMC. In the course of a workday, Mr. Graves saw Ms. Johnson six to ten times. He testified they "talked about everything." Ms. Johnson never complained to him of any problems with her feet or a work injury to her feet. They did discuss her arthritis in her knees.

FUMC denied Ms. Johnson's workers' compensation claim following Dr. Hutchison's opinion that her tarsal tunnel syndrome was not work related. (Ex. 4 and 7.) Ms. Johnson filed a Petition for Benefit Determination seeking medical and temporary

---

workers' compensation claim in 2011. For each claim, treatment was initially offered until the claims were denied.
[4] The second panel of physicians was not admitted into evidence.
[5] Ms. Odom did not give Dr. White's first name.

4

disability benefits. The parties did not resolve the disputed issues through mediation, and the Mediating Specialist filed a Dispute Certification Notice. Ms. Johnson filed a Request for Expedited Hearing, and this Court heard the matter on December 9, 2015.

At the expedited hearing, Ms. Johnson asserted she sustained an injury to her feet and whole body and that her job "should have taken care of her." FUMC countered that Ms. Johnson offered no medical proof whatsoever establishing an injury arising primarily out of her employment. FUMC argued Dr. Hutchison provided the only expert opinion on medical causation and opined her tarsal tunnel syndrome was not a work-related injury. Thus, it contends Ms. Johnson is not entitled to workers' compensation benefits for her alleged injury.

## Findings of Fact and Conclusions of Law

The employee in a workers' compensation claim has the burden of proof on all essential elements of a claim. *Scott v. Integrity Staffing Solutions,* No. 2015-01-0055, 2015 TN Wrk. Comp. App. Bd. LEXIS 24, at *6 (Tenn. Workers' Comp. App. Bd. Aug. 18, 2015). An employee need not prove every element of his or her claim by a preponderance of the evidence in order to obtain relief at an expedited hearing. *McCord v. Advantage Human Resourcing*, No. 2014-06-0063, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *7-8, 9 (Tenn. Workers' Comp. App. Bd. Mar. 27, 2015). Instead, an employee such as Ms. Johnson must come forward with sufficient evidence from which this court might determine she is likely to prevail at a hearing on the merits. *Id.* This lesser evidentiary standard "does not relieve an employee of the burden of producing evidence of an injury by accident that arose primarily out of and in the course and scope of employment at an expedited hearing, but allows some relief to be granted if that evidence does not rise to the level of a 'preponderance of the evidence.'" *Buchanan v. Carlex Glass Co.*, No. 2015-01-0012, 2015 TN Wrk. Comp. App. Bd. LEXIS 39, at *6 (Tenn. Workers' Comp. App. Bd. Sept. 29, 2015).

For injuries on or after July 1, 2014, an employee must show that he suffered an accidental injury caused by an incident, or specific set of incidents, arising primarily out of and in the course and scope of employment, and identifiable by time and place of occurrence. Tenn. Code Ann. § 50-6-102(14)(A) (2015). "Arising primarily out of and in the course and scope of employment" requires a showing, to a reasonable degree of medical certainty, that the injury causing disablement or the need for medical treatment contributed more than fifty percent considering all causes. Tenn. Code Ann. § 50-6-102(13)(C) (2015). "Shown to a reasonable degree of medical certainty" means that, in the opinion of the treating physician, it is more likely than not considering all causes. Tenn. Code Ann. § 50-6-102(14)(D) (2015).

The Court finds the proof was not clear as to the specific injury Ms. Johnson alleged in this case. As noted above, in the Petition for Benefit Determination, Ms.

Johnson described her injury as follows: "feet . . . tarsal tunnel syndrome…sides from toe to head." (T.R. 1.) The Dispute Certification Notice listed the injury as "bilateral feet." However, Ms. Johnson testified her injuries extend to her calf, knee, hip, and left shoulder. She also described a "twist" in her whole body that she associated with her work. The Tennessee Workers' Compensation Appeals Board recently reiterated the long-standing legal principle, "It is well-settled that factual assertions made in a pleading are binding on the party making the assertion." *Duck v. Cox Oil Co.*, No. 2015-07-0089, 2016 TN. Wrk. Comp. App. Bd. LEXIS 2, at *14 (Tenn. Workers' Comp. App. Bd. Jan. 21, 2016); *Aranjo v. Rich*, No. 01-A-01-9206-CH-00235, 1992 Tenn. App. LEXIS 892, at *7 (Tenn. Ct. App. Nov. 6, 1992). The Court finds the pleadings in this case, the Petition for Benefit Determination and Dispute Certification Notice, indicate the alleged work-related injury is bilateral tarsal tunnel syndrome.

The issue before this Court is whether Ms. Johnson came forward with sufficient medical evidence that her tarsal tunnel syndrome arose primarily out of her employment at FUMC. The medical proof from Dr. Cawthon supports Ms. Johnson's claim of bilateral tarsal tunnel; however, Dr. Cawthon gave no opinion on medical causation for that condition. The records in evidence from Durham Chiropractic and Dr. Banks do not even mention tarsal tunnel syndrome. The Court finds the only medical proof in evidence addressing medical causation for Ms. Johnson's alleged tarsal tunnel injury is from Dr. Hutchison. Upon taking a history from Ms. Johnson, reviewing her prior medical records, and examining her, Dr. Hutchison opined her tarsal tunnel was *not* caused by a work-related injury. Rather, he opined her condition was causally related to her pre-existing diabetes and pes plenus.

Without expert medical evidence, Ms. Johnson cannot meet her burden of proving her injury arose primarily out of and in the course and scope of her employment. Therefore, as a matter of law, Ms. Johnson has not come forward with sufficient evidence from which this Court may conclude that she is likely to prevail at a hearing on the merits. Her request for medical benefits is denied at this time.

Having found Ms. Johnson is unlikely to establish causation, the Court further finds Ms. Johnson is not entitled to the requested temporary disability benefits.

**IT IS, THEREFORE, ORDERED** as follows:

1. Ms. Johnson's claim against First United Methodist Church and its workers' compensation carrier for the requested medical and temporary disability benefits is denied at this time.

2. This matter is set for an Initial (Scheduling) Hearing on February 11, 2016, at 1:00 p.m. Central time.

**ENTERED** this the 27th day of January, 2016.

_Judge Amber E. Luttrell_
**Judge Amber E. Luttrell**
**Court of Workers' Compensation Claims**

Initial (Scheduling) Hearing:

An Initial (Scheduling) Hearing has been set with **Judge Luttrell, Court of Workers' Compensation Claims. You must call 901-543-2668 or toll-free at 855-543-5046 to participate in the Initial Hearing.**

**Please Note: You must call in on the scheduled date/time to participate. Failure to call in may result in a determination of the issues without your further participation.**

Right to Appeal:

Tennessee Law allows any party who disagrees with this Expedited Hearing Order to appeal the decision to the Workers' Compensation Appeals Board. To file a Notice of Appeal, you must:

1. Complete the enclosed form entitled: "Expedited Hearing Notice of Appeal."

2. File the completed form with the Court Clerk _within seven business days_ of the date the Workers' Compensation Judge entered the Expedited Hearing Order.

3. Serve a copy of the Expedited Hearing Notice of Appeal upon the opposing party.

4. The appealing party is responsible for payment of a **filing fee in the amount of $75.00.** Within ten calendar days after the filing of a notice of appeal, payment must be received by check, money order, or credit card payment. Payments can be made in person at any Bureau office or by United States mail, hand-delivery, or other delivery service. In the alternative, the appealing party may file an Affidavit of Indigency, on a form prescribed by the Bureau, seeking a waiver of the filing fee. The Affidavit of Indigency may be filed contemporaneously with the Notice of Appeal or must be filed within ten calendar days thereafter. The Appeals Board will consider the Affidavit of Indigency and issue an Order granting or denying the request for a waiver of the filing fee as soon thereafter as is

7

practicable. **Failure to timely pay the filing fee or file the Affidavit of Indigency in accordance with this section shall result in dismissal of the appeal.**

5. The parties, having the responsibility of ensuring a complete record on appeal, may request, from the Court Clerk, the audio recording of the hearing for the purpose of having a transcript prepared by a licensed court reporter and filing it with the Court Clerk within ten calendar days of the filing of the Expedited Hearing Notice of Appeal. Alternatively, the parties may file a joint statement of the evidence within ten calendar days of the filing of the Expedited Hearing Notice of Appeal. The statement of the evidence must convey a complete and accurate account of what transpired in the Court of Workers' Compensation Claims and must be approved by the workers' compensation judge before the record is submitted to the Clerk of the Appeals Board.

6. If the appellant elects to file a position statement in support of the interlocutory appeal, the appellant shall file such position statement with the Court Clerk within five business days of the expiration of the time to file a transcript or statement of the evidence, specifying the issues presented for review and including any argument in support thereof. A party opposing the appeal shall file a response, if any, with the Court Clerk within five business days of the filing of the appellant's position statement. All position statements pertaining to an appeal of an interlocutory order should include: (1) a statement summarizing the facts of the case from the evidence admitted during the expedited hearing; (2) a statement summarizing the disposition of the case as a result of the expedited hearing; (3) a statement of the issue(s) presented for review; and (4) an argument, citing appropriate statutes, case law, or other authority.

**APPENDIX**

Exhibits:
1. Affidavit of Essie Johnson
2. Wage Statement
3. Separation Notice
4. Notice of Denial of Claim
5. Medical Records of the following providers:
    a. Jackson Clinic
    b. Durham Chiropractic
    c. Dr. Jerome Cawthon
    d. Dr. Jason Hutchison
    e. Nova Medical Centers
    f. Article on Equinus
6. C-42 Panel dated November 18, 2014
7. Travelers denial letter
8. Job Description
9. Tricia Odom's May 4, 2015 Memo to Ms. Johnson's Personnel File
10. Tricia Odom's May 5, 2015 Memo to Ms. Johnson's Personnel File
11. 2015 Attendance Calendar

Technical record:[6]
1. Petition for Benefit Determination
2. Dispute Certification Notice
3. Request for Expedited Hearing
4. Employer's Position Statement
5. Employer's Witness List

Marked for Identification Only:
1. Lift Therapy Medical Bill

---

[6] The Court did not consider attachments to Technical Record filings unless admitted into evidence during the Expedited Hearing. The Court considered factual statements in these filings or any attachments to them as allegations unless established by the evidence.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Expedited Hearing Order was sent to the following recipients by the following methods of service on this the 27th day of January, 2016.

| Name | Certified Mail | Via Fax | Via Email | Service sent to: |
|------|----------------|---------|-----------|------------------|
| Essie Johnson, Employee | X | | | 33 Denmark Jackson Road Denmark, Tennessee 38391 |
| Paul T. Nicks, Employer's Counsel | | | X | pnicks@travelers.com |

Penny Shrum, Clerk of Court
Court of Workers' Compensation Claims
WC.CourtClerk@tn.gov